IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

| | |
|---|---|
| IN THE MATTER OF<br>JANE DOE, THE STUDENT,<br>BY AND THROUGH<br>HER PARENTS, K.M. AND A.M.<br><br>PLAINTIFFS.<br><br>VS.<br><br>KNOX COUNTY, TENNESSEE<br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. __<br>)<br>)<br>)<br>)<br>) |

# VERIFIED COMPLAINT

**COME THE PLAINTIFFS,** through counsel, submitting this Complaint and showing:

## I.   PARTIES, JURISDICTION, AND VENUE

1.   The Plaintiffs are JANE DOE, a ninth-grade student, who resides in Knox County with her parents, K.M. and A.M.

2.   Defendant, Knox County, Tennessee, is vested with management and control of the Knox County School System.  Knox County, which includes Knox County Board of Education ("Knox County Schools"), is the ultimate policy-making body with regard to determinations in the operation of the school system.  The

1

Defendant may be served with process through its Mayor, Glenn Jacobs, at 400 Main Street, Knoxville, Tennessee 37902.[1]

3. This action arises out of the following Federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101, *et seq.*, amended by the Americans with Disabilities Act (ADA-AA) with an effective date of January 1, 2009; the Rehabilitation Act of 1973, §§ 504 and 505, as amended, 29 U.S.C.A. §§ 794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under § 504 to conform to the definition of "disability" under ADA-AA. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331.

4. Knox County is the beneficiary of Federal funding subject to Section 504 of the Rehabilitation Act, and are therefore covered by the Rehabilitation Act of 1973.

5. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the cause of action arose in Knox County and the Defendant may be found in Knox County.

## II. INTRODUCTION

6. Disabilities come in all shapes and sizes, and so do reasonable accommodations. Having accepted federal funds, Knox County Board of Education's written policy ("Equal Educational Opportunities") states that students with disabilities are entitled to equal opportunities and it cites the ADA.

---

[1] The Law Director's office sometimes instructs service of a school-related case through its Mayor (as is being done here) and, other times, through its Superintendent of Schools. Accordingly, Plaintiffs have chosen the *broader* approach, serving the Mayor.

7. JANE DOE has Misophonia, an extreme reaction to hearing normal sounds of eating gum and chewing food. Because of pathways in her brain, JANE DOE suffers extreme distress upon hearing these sounds, to the point that she cannot tolerate them and must escape. (See Ex. A, Jane Doe Declaration)

8. For JANE DOE to safely learn at L&N Stem Academy ("L&N"), she needs a reasonable accommodation of a ban on eating food and chewing gum *in the academic classrooms.* While some teachers have accepted the seriousness of Misophonia, others have not, permitting the regular chewing of gum and eating in all academic classrooms. L&N's administration will not recognize the need for all classes to modify their stances of eating food and chewing gum as an accommodation for Sarah's condition.

9. Legal cases of Misophonia are rare. However, in the parenting context, an unwillingness to acknowledge the seriousness of the medical issues involving Misophonia has contributed to findings of neglect. See *In re J.D.*, 437 P.3d 131, 135 (Mt. 2019)(father who thought "chewing louder" would help desensitize child with Misophonia lost parental rights).

### III. FACTS

10. JANE DOE is a ninth grader at L&N Stem Academy in Knox County.

11. JANE DOE has an unusual medical impairment, Misophonia, where routine sounds of persons chewing and eating cause her an intense reaction. This is exacerbated by JANE DOE having a migraine headache disorder and hyperacusis, an unusual tolerance to ordinary environmental sounds.

3

## What is Misophonia?

12.     Misophonia is a disorder of decreased tolerance to specific sounds or their associated stimuli. These stimuli (or triggers) are experienced *emotionally, physiologically, and behaviorally* in ways not experienced by most people.

13.     Misophonia is a neurological and auditory disorder with emotional consequences.

> "People with misophonia are affected emotionally by common sounds — usually those made by others, and usually ones that other people don't pay attention to. These examples (breathing, yawning, or chewing) create a fight-or-flight response that triggers anger and a desire to escape. Misophonia is little-studied and we don't know how common it is. It affects some worse than others and can lead to isolation, as people suffering from this condition try to avoid these trigger sounds. Misophonia usually appears around age 12, and likely affects more people than we realize."

https://www.health.harvard.edu/blog/misophonia-sounds-really-make-crazy-2017042111534

## What Causes Misophonia?

14.     "The underlying causes of Misophonia are unknown, although there are numerous areas of speculation, most of which concern aberrant associations between auditory pathways in the brain and the amygdala (which mediates the fight/flight response). There are no verified treatments yet, but research is underway."

https://www.differentbrains.org/resources/misophonia/

15.     In simple terms, JANE DOE's brain misinterprets some people-generated sounds, especially chewing and eating. These innocent sounds, for most people,

cause *her* great fear and anxiety. When she hears these sounds, her nervous system triggers a fight or flight response, and they cause or aggravate her chronic migraines.

### How Does Misophonia Affect JANE DOE?

16. JANE DOE's reaction to the chewing and eating sounds is reflexive, meaning she has no control over her initial cognitive response. Thus, when her Misophonia is in an activated state[2]—when she hears chewing gum and eating noises—she is substantially limited in her ability to process thoughts (think), concentrate, learn, and cope.

17. JANE DOE does not *fight* people she hears chewing and eating. She instead internalizes and often chooses *flight,* thus physically and mentally leaving the learning environment entirely, or else she has an experience like a panic attack and cannot cope.

### Does JANE DOE Have an IEP under the IDEA?

18. No, JANE DOE does not have an Individual Education Plan (IEP) under the IDEA, nor does she require one. She is instead a "504 only" student, one who does not have, nor require an IEP. That is, JANE DOE does not require *specially designed instruction.* The IDEA, as part of its "free appropriate public education," requires the delivery of *special education.* 20 U.S.C. § 1401(9). "Special education" means "specially designed *instruction.*" 34 C.F.R. § 300.39(a). As shown below, JANE DOE's needs do not involve specially designed instruction or FAPE under

---

[2] 42 U.S.C. § 12102(4)(D)

5

the IDEA. Indeed, in eighth grade, middle school, JANE DOE was a straight A student. Rather, she needs an accommodation to equally access the learning environment.[3]

**What Reasonable Accommodations Are Necessary for JANE DOE?**

19. For JANE DOE individually, her most important accommodation remains unfulfilled—a ban on eating and chewing in all of her *academic* classrooms (with a reasonable exception for other students with medical needs).[4] See, e.g., [https://misophoniainstitute.org/504-plan-and-workplace-accommodations/](https://misophoniainstitute.org/504-plan-and-workplace-accommodations/).

20. Before L&N Stem Academy, Jane Doe attended middle school at a private school called Episcopal School of Knoxville (ESK). ESK did not allow eating or chewing gum in the classrooms, so Jane Doe very rarely had to leave the classroom. Jane Doe excelled, becoming a National Junior Honors Society Member with straight A's.[5]

21. ESK finishes at eighth grade, so Jane Doe began L&N Stem Academy, a public school, for ninth grade (2021-2022). Unfortunately, L&N allows every

---

[3] See *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934, at *33 (W.D. Tenn. Sep. 17, 2021)("As a result, 'disabilities that result in a need for reasonable accommodations to access a classroom. . . [i]f they don't require specialized instruction,' are not covered under IDEA.") Much like a wheelchair ramp for a person with a physical disability allows access to the education inside the school, JANE DOE needs an accommodation to access her education in these classes.

[4] JANE DOE has tried silencing headphones but those excluded other important learning. Additionally, preferential seating has proved unsuccessful because even low decibel sounds are harmful due to the Misophonia and hyperacusis.

[5] COVID prevented in-school attendance in eighth grade, but she attended in-person in both sixth and seventh grades.

teacher to decide for himself/herself whether chewing gum and eating in the classroom is permitted.

22.     In Honors Integrated Math 2, the teacher is strict about gum and food—he tells everyone to spit it out before entering the class. All students understands this. This class is Jane Doe's favorite class, partly because she is free of the sounds of eating and chewing and can focus on the learning experience, not unlike her middle school experience.

23.     But not all of L&N's teachers enforce the no eating and no gum chewing rule like the Integrated Math2 teacher. Other teachers do *not* control eating and chewing gum in their classrooms, to the point that it is rampant. In one class, History, the gum chewing and eating is so frequent that Jane Doe must escape the classroom an estimated 75% of the time. She goes to find an empty room.

24.     Across all of her academic classrooms, Jane Doe is missing approximately half her educational time. She is finding an "empty room," or else sitting by herself outside for more than 50% of her educational time, simply to escape the eating and chewing of gum in academic classes. By the end of the day, constantly trying to escape the sounds, she is physically and emotionally exhausted to the point that she cannot do things a normal student her age would do. She is just too tired.

25.     JANE DOE's parents have made a number of requests for a ban on eating and gum in JANE DOE's academic classrooms. They have never seen an official policy stating a *right* to eat and chew gum in classes. And discipline for chewing gum

7

is commonplace in education.[6] Yet some teachers claim there *is* a school policy or rule that prevents them from prohibiting eating and chewing gum.

26. In addition to academic classrooms, JANE DOE would like to attend an elective known as "Genius Hour,"[7] in her case two forty-minute sessions back-to-back. This does overlap with the lunchtime hour, but even that could be accommodated by devoting the first 15-20 minutes to eating the lunch, with JANE DOE attending thereafter. Unfortunately, L&N takes the position that eating and chewing is allowed for the *entire eighty minutes.*

27. On December 8, 2021, JANE DOE's parents put the request for eating and chewing ban in writing. However, on January 3, 2021, the District refused to address the ban other than simply saying it "found no evidence" her rights were being violated.

28. On January 14, 2022, the assistant principal advised Jane Doe's parent: "In terms of Genius hours, based on our school policy and school rules we do not prohibit the eating or drinking of food in class." (Exhibit B). This lack of prohibition on eating and drinking is not limited to Genius hours, but to academic classes too, with many of JANE DOE's not prohibiting eating food and chewing gum in their

---

[6] *See, e.g., Gayemen v. Sch. Dist. of Allentown*, 2016 U.S. Dist. LEXIS 69018, at *29 (E.D. Pa. May 26, 2016)(gum chewing in class is Level I infraction); *Oliveras v. Saranac Lake Cent. Sch. Dist.*, 2014 U.S. Dist. LEXIS 44603, at *24 (N.D.N.Y. Mar. 31, 2014)

[7] "Genius hour" is a distinguishing feature of L&N Stem. 2021-22 L&N STEM Acadmy Course Catalog - Google Slides. https://docs.google.com/presentation/d/1iYchtMjbBGI2nsWqC810qzZt3Jma-FAIJe7T8xhVkuTI/edit#slide=id.p15

classrooms. Administration will *not* enforce the accommodation that is actually necessary: a ban against eating food and chewing gum in JANE DOE's academic classes.

13. JANE DOE requires modification of any school policy or rule to ban eating and chewing in her academic classrooms as a reasonable accommodation, along with appropriate accommodation for "Genuis hour." If there is no such formal rule, then teachers must be instructed that JANE DOE needs enforcement of the accommodation.

14. Without such accommodations, JANE DOE will continue to be harmed, subjected to unnecessary panic, fleeing the classroom (even sitting outside in the cold to escape), unequal opportunity, and exacerbated headaches. By *not* accommodating her needs, L&N is causing physical harm to Jane Doe, as well as a gap in learning, negatively affecting JANE DOE's grades and learning.

15. Instead of accommodating Jane Doe, L&N has encouraged JANE DOE to forego certain academic classes and take additional "study halls." But JANE DOE already has study halls, and should not be forced from academic classes of interest because of her disability—an exclusion. Moreover, these study halls have no control over eating and chewing either. In fact, these are more commonly accepted there.

16. At this point, the parents have tried to work with the school. They have submitted a grievance, but that was just met with a denial rather than *modifying the*

*school policy:* i.e. Knox County said, "no evidence of a violation of the student's rights under Section 504."[8]

17. In order to *safely* access her education in the academic classrooms, JANE DOE needs the reasonable accommodation of modifying the school policy in her classes to ban eating and chewing. It is deliverable; it *has* been delivered already in some classes; and it can be accomplished by rule modification. In the rare event there is a medical necessity of another child to eat, the appropriate seating arrangement can be addressed.

### IV. CAUSES OF ACTION

18. The foregoing facts are incorporated. Plaintiffs bring the following causes of action against Knox County:

### AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

19. Under Section 504, "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. §794(a).

---

[8] Knox County said there was an "appeal" option—but that was to its own Superintendent, followed by another appeal to its own Board of Education and, then, an appeal to the Department of Education in Washington, D.C. Based on the times frames in place, the school-year largely would be over. Plainly this is a "paper drill," beginning with Knox County's refusal to even respond factually, instead just denying.

20. Similarly, under the ADA, KCS may not, by reason of disability, exclude the Plaintiff from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. §12132.

21. Moreover, under the ADA and Section 504, KCS "shall make reasonable modifications *in policies, practices, or procedures* when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 CFR §35.130(b)(7)(2001) (504)(emphasis added); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (Section 504).

22. Under the ADA and Section 504, Defendant is failing to make a reasonable modification under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7), and excluding Plaintiff from the full participation in her public education, in violation of 42 U.S.C. § 12132, 28 C.F.R. § 35.130, 29 U.S.C. § 794(a), and 34 C.F.R. § 104.4(b)(1)(i).

## IV. Relief Sought

23. This is a verified Complaint. (See Ex. C). For relief, Plaintiffs seek a judgment that KCS violated the ADA and Section 504, as reflected above.

24. Additionally, Plaintiffs seek an injunction through a temporary restraining order and/or preliminary injunction, followed by permanent relief, requiring Knox County to implement the requested modifications/accommodations to provide Plaintiff equal and full access to her education.

25. Plaintiff also seek their reasonable attorneys' fees and costs, and expenses under 42 U.S.C. §1988; and any further and just relief.

**GILBERT LAW, PLLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-756-8203
Facsimile: 423-756-2233
justin@schoolandworklaw.com

&

**THE SALONUS FIRM, PLC**

/s Jessica F. Salonus
JESSICA F. SALONUS (TN Bar No. 28158)
139 Stonebridge Boulevard
Jackson, TN 38305
Telephone: 731-300-0970
jsalonus@salonusfirm.com