UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |  |
|---|---|---|
| **JANE DOE**, *the student; by and through her parents,* **K.M.** and **A.M.**; | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:22-cv-63-KAC-DCP |
| **KNOX COUNTY BOARD OF EDUCATION**; | ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is the "Motion to Dismiss" of Defendant Knox County Board of Education (KCBOE), which seeks to dismiss Plaintiff's Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) because Plaintiff, Jane Doe, failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act (IDEA) [Doc. 25]. Because the crux of Plaintiff's Second Amended Complaint "seeks relief that is also available under" the IDEA, the law required her to "exhaust the IDEA's administrative procedures" before filing suit. *See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). She failed to do so. Accordingly, the Court grants KCBOE's "Motion to Dismiss" [Doc. 25].

**I.    Plaintiff's Complaint**

Plaintiff, a ninth-grade student who attends L&N Stem Academy (L&N) in the Knox County School System, has misophonia [Doc. 27 ¶¶ 1, 6, 9]. "Misophonia is a disorder of decreased tolerance to specific sounds or their associated stimuli" [*Id.* ¶ 11]. Plaintiff's misophonia manifests as "an extreme reaction to hearing normal sounds of eating gum and

1

chewing food" [*Id.* ¶ 6]. When Plaintiff's misophonia "is in an activated state—when she hears chewing gum and eating noises—she is substantially limited in her ability to process thoughts (think), concentrate, learn, and cope" [*Id.* ¶ 15 (internal footnote omitted)].

Plaintiff states that she "is missing approximately half her educational time" at L&N because she leaves the classroom to "escape the eating and chewing of gum in academic classes" [*Id.* ¶ 30]. She asserts that "L&N is causing . . . a gap in learning, negatively affecting Jane Doe's grades and learning" [*Id.* ¶ 36]. To relieve this harm, Plaintiff requests that KCBOE, acting through L&N, institute "a ban on eating and chewing in all of her *academic* classrooms (with a reasonable exception for other students with medical needs)" [*Id.* ¶ 24 (emphasis in original); *see also id.* ¶¶ 31, 35]. Further, Plaintiff "would like to attend an elective hour known as 'Genius Hour,'" which "overlap[s] with lunchtime" [*Id.* ¶ 32]. During Genius Hour, Plaintiff would "like to participate in Model UN" [Doc. 27-2 ¶ 10]. As such, she also seeks a yet undefined "appropriate accommodation" that would allow her to participate in Genius Hour [Doc. 27 ¶ 35]. Plaintiff alleges that the relief she seeks is necessary for her to "*safely* access her education in the academic classrooms" [*Id.* ¶ 39 (emphasis in original)].

Plaintiff, through her parents, filed suit under the Americans with Disabilities Act of 1990 and Title V of the Rehabilitation Act of 1973, but not the IDEA [*Id.* ¶ 3]. Factually, Plaintiff alleges that she "does not have an Individual Education Plan [sic] (IEP) under the IDEA" [*Id.* ¶ 7]. Legally, Plaintiff alleges that she does not require or qualify for an individualized education program (IEP) under the IDEA [*See* Doc. 27 ¶¶ 17-23].[1] And it is undisputed that Plaintiff did not exhaust the IDEA's administrative procedures before filing suit [*See* Docs. 27 ¶ 17; 25 at 3].

---

[1] When considering a motion to dismiss, the Court, of course, "is not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).

2

Plaintiff ultimately seeks "permanent relief, requiring Knox County to implement the requested modifications/accommodations in order to provide Plaintiff equal and full access to her education" [Doc. 27 ¶ 46].

## II.    Procedural History

Plaintiff initially filed her first Complaint and a "Motion for Temporary Restraining Order and Preliminary Injunction" on February 17, 2022 [*See* Docs. 1-2]. On February 23, the Court set a March 3 hearing on Plaintiff's motion and ordered Defendant to promptly file any response to the motion [Doc. 7 at 1-2]. In that Order, the Court also identified the potential jurisdictional issue of whether Plaintiff's claims were subject to the exhaustion requirement of the IDEA[2] [*Id.* at 2] (citing and identifying *Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (6th Cir. 2021) and *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743 (2017)). The Court held the March 3 hearing on Plaintiff's motion and then permitted brief leave, until March 11, for the Parties to "provide supplemental briefing on specific issues that they were not in a position to fully address at the hearing," including issues related to exhaustion under the IDEA [Doc. 22 at 1].

On March 10, Plaintiff filed an "Unopposed Motion to Amend Complaint" "to add more factual detail illustrating why, in their view, administrative exhaustion is not required" under the IDEA [Doc. 23 at 2], which the Court granted [Doc. 26]. On March 11, Plaintiff filed her Second

---

[2] The Sixth Circuit has not determined whether a failure to exhaust in this context is jurisdictional. *See L.G. by and through G.G. v. Bd. of Educ. of Fayette Cnty., Ky.*, 775 F. App'x 227, 231 n.3 (6th Cir. 2019); *Sharbowski v. Utica Cmty. Schs.*, 2019 WL 587274, *7 n.2 (E.D. Mich., Feb. 13, 2019) (noting that the Sixth Circuit "has declined to take an affirmative position" on a circuit split concerning whether a failure to exhaust under the IDEA is jurisdictional). But, if the matter is jurisdictional, this Court has an independent obligation to assess the alleged basis for jurisdiction and must dismiss the action if the Court lacks jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)).

Amended Complaint, which was verified[3] [Doc. 27]. And KCBOE moved to dismiss Plaintiff's Second Amended Complaint[4] under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) based on failure to exhaust the IDEA's administrative procedures before filing suit [*See* Doc. 25 at 1, 1 n.2]. Because KCBOE's motion to dismiss was potentially dispositive and related to this Court's jurisdiction to hear the matter, this Court's Local Rules gave Plaintiff "21 days in which to respond." *See* E.D. Tenn. L.R. 7.1(a). However, Plaintiff did not file a response to KCBOE's motion to dismiss, and the time to do so has passed. *See id.* Instead, Plaintiff filed her supplemental brief, addressing the issues identified by the Court [Doc. 28], and then she filed a "Supplemental Brief Requesting TRO" [Doc. 30] and a "Second and Emergency Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 31]. Because these filings continue to assert that Plaintiff is entitled to the relief she seeks,[5] the Court does not construe Plaintiff's failure to specifically respond to KCBOE's motion to dismiss as a "waiver of any opposition to the relief sought." *See* E.D. Tenn. L.R. 7.2. Accordingly, this matter is ripe for adjudication.

### III. KCBOE's Motion to Dismiss

To state a viable claim for relief under Federal Rule of Civil Procedure 12(b)(6), the operative complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

---

[3] *See* 28 U.S.C. § 1746.

[4] The Court's administrative docketing system makes the precise timing of the relevant filings appear unclear, but in its Motion to Dismiss, KCBOE notes that "Plaintiff filed an additional amended complaint" (her Second Amended Complaint) and that "Plaintiff's failure to exhaust her administrative remedies cannot be cured by amendment" [Doc. 25 at 1 n.1].

[5] In assessing the propriety of granting preliminary injunctive relief, the Court must consider whether Plaintiff "has a strong likelihood of success on the merits." *See Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020).

4

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the operative complaint in the light most favorable to Plaintiff, accept all well-pled factual allegations as true, and draw all reasonable inferences in Plaintiff's favor. *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016). But the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). And the Court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Likewise, under Rule 12(b)(1), where, as here, a court reviews "a facial attack" on the Court's subject matter jurisdiction, "a district court takes the allegations in the complaint as true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)) (quotations omitted). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Id.* (citing *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)).

The IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education,'" s*ee Fry*, 137 S. Ct. at 748, to each "child with a disability," s*ee* 20 U.S.C. § 1401(3)(A)(i) (defining "child with disability"). Under the IDEA, an IEP an "serves as the 'primary vehicle' for providing each child" a free appropriate public education. *Fry*, 137 S. Ct. at 749 (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). A "free appropriate public education" includes certain "special education and related services" provided at no cost to a child with a disability. 20 U.S.C. § 1401(9). The IDEA also includes an exhaustion provision:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution,

5

> the *Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973*, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted* to the same extent as would be required had the action been brought under this subchapter.

*Id.* at § 1415(l) (emphasis added). By its text, the IDEA requires a plaintiff to administratively exhaust her claims under the Americans with Disabilities Act of 1990 or Title V of the Rehabilitation Act of 1973 "before filing" a civil action, when the relief sought in the civil action is "also available under" the IDEA. *See id.*

In *Fry v. Napoleon Community Schools*, the Supreme Court thoroughly addressed the scope of the IDEA's exhaustion provision. *See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743 (2017). Justice Kagan, writing for the Court, explained that "Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." *Id.* at 752 (alterations in original). The Court explained that "in determining whether a suit indeed 'seeks' relief" that is available under the IDEA, "a court should look at the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752. "[E]xamination [of the complaint] should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters." *Id.* at 755. "The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words" of the IDEA. *Id.* Instead, "[w]hat matters is the crux—or in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.* "Any other approach . . . would allow plaintiffs to evade the Act's restrictions through artful pleading." *Id.* (citations and quotations omitted).

The Court also provided a pair of hypothetical questions to guide lower courts in making this determination:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 756 (emphasis in original). If the answer to both questions is no, "then the complaint probably does concern" relief available under the IDEA, "even if it does not explicitly say so." *Id.* at 756. This is because the IDEA "protects only 'children' . . . and concerns only their schooling." *See id.* at 755 (citing 20 U.S.C. § 1412(a)(1)(A)).

Following *Fry*, the Sixth Circuit decided *Perez v. Sturgis Public Schools*, deploying the new guidance from *Fry*. *See Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (6th Cir. 2021). In *Perez*, the Court determined that the gravamen of the complaint was that plaintiff was "denied an adequate education," based on his allegations that "the school's failures denied him meaningful access to the classroom or any other [school] activities, kept him from accessing his education, and kept him from participating and benefitting from classroom instruction." *Id.* at 240 (cleaned up). The Court answered both of *Fry*'s hypothetical questions in the negative because (1) the "complaint points to a focus on the adequacy of his education" and plaintiff "could not bring essentially the same claim against a facility that had no responsibility to educate him" and (2) no adult at the school could "press the same grievance" because "the school would have no obligation" to provide educational services for the adult. *Id.* at 241 (citations and quotations omitted). The Court cautioned that the "focus of the analysis is not the kind of relief the plaintiff wants, but the **kind of harm** he wants relief from." *Id.* at 241 (emphasis added). "Relief available under the IDEA means

7

relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id.* (citations and quotations omitted).

Thus, the question before this Court is whether the crux of Plaintiff's Second Amended Complaint, setting aside any attempts at artful pleading and focusing on the harm Plaintiff wants relief from, seeks relief that is also available under the IDEA. The answer is yes.

The precise harm that Plaintiff seeks to remedy is the alleged lack of "meaningful access" to an "adequate education" in her classrooms and a Genius Hour during which she would participate in an educational activity. *See Perez*, 3 F.4th at 240. As pled, without cessation of the sounds associated with chewing and eating during class, [Doc. 27 ¶ 15], Plaintiff cannot receive "her education in the academic classrooms," [*Id.* ¶ 39]. L&N's alleged failure to modify or adapt Plaintiff's instruction has kept her from "participating and benefitting from classroom instruction." *See Perez*, 3 F.4th at 240. Because the harm Plaintiff alleges "is the denial of the public education," this lawsuit "falls within the scope" of the IDEA's exhaustion requirement. *See id.* at 241 (citing *Fry*, 137 S. Ct. at 754).

As in *Perez*, Plaintiff could not have brought "essentially the same claim" against a different public facility, because it would have no responsibility to provide educational instruction to her; nor could any adult have "pressed essentially the same grievance" because KCBOE would have no obligation to educate the adult. *Id.* at 241. In this way, Plaintiff is materially different than a plaintiff who needs an access ramp to enter a school building[6] or a "mask mandate" to enter

---

[6] *See Fry*, 137 S. Ct. at 756 ("By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools. And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs." (citation omitted)).

8

"public, brick-and-mortar government buildings."[7] The fact that Plaintiff does not currently have an IEP in place under the IDEA, [*see* Doc. 27 ¶ 17], does not change this conclusion. *See L.G. by and through G.G. v. Bd. of Educ. of Fayette Cnty., Ky.*, 775 F. App'x 227, 229-31 (6th Cir. 2019) (affirming order dismissing claim for failure to exhaust under the IDEA where student had state "homebound services" but no IEP or Section 504 education plan).

More granularly, "relief for the events, conditions, or consequences of which [Plaintiff] complains" is available under the IDEA, even though it may not necessarily be "relief of the kind [Plaintiff] prefers" or at the speed Plaintiff would prefer. *See Perez*, 3 F.4th at 241. Plaintiff argues that she "does not qualify as a 'child with a disability' under the IDEA" and, therefore, does not seek relief available under IDEA [Doc. 28 at 1]. But the law provides otherwise.

The IDEA defines a "child with a disability" to include "a child" with "other health impairments" and "who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). As an initial matter, Plaintiff is a child, and "other health impairments," specifically includes "a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment." 34 C.F.R. § 300.8(c)(9). This definition comfortably extends to Plaintiff's description of the manifestation of her misophonia [*See* Doc. 27 ¶ 15].

Further, "special education" is "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability," 20 U.S.C. § 401(29), including "adapting, as appropriate . . . , the content, methodology, or ***delivery of instruction***" to "address the unique needs of the child," 34 C.F.R. § 300.39(b)(3) (emphasis added). Here, Plaintiff seeks an adaptation to

---

[7] *S.B. by and through M.B. v. Lee*, ---F.Supp.3d---, 2021 WL 4755619, *6-*7 (E.D. Tenn. Oct. 12, 2021).

9

the delivery of her instruction where specific auditory triggers are removed or limited [Doc. 27 ¶¶ 15 (describing Plaintiff's need for adapted instruction that eliminates certain triggers so she can "process thoughts (think), concentrate, learn, and cope"), 36 (describing the harm "causing . . . a gap in learning, negatively affecting [Plaintiff's] grades and learning")]. "[S]pecial education" is a statutory term, not a pejorative term. And contrary to Plaintiff's assertion, "special education" is available to children who—like her—are intellectually gifted, precisely because the IDEA "guarantees disabled students access to [education], no matter their innate intelligence." *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1082 (8th Cir. 2020) (rejecting argument that "the Student is simply too intellectually gifted to qualify for special education"), *cert. denied sub nom. Indep. Sch. Dist. No. 283 v. E.M. D.H. ex rel. L. H.*, 142 S. Ct. 67, 211 L. Ed. 2d 9 (2021).

Finally, "related services," is defined broadly to include "such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education," 20 U.S.C. § 1401(26)(A), including, among a whole host of services, "social work services in school, and parent counseling and training," 34 C.F.R. § 300.34 (defining the panoply of "related services" available). As particularly relevant here, "social work services" includes "mobilizing school and community resources to enable the child to learn as effectively as possible in his or her educational program." 34 C.F.R. § 300.34(c)(14)(iv). While Plaintiff has not pled the precise type of "related services" she seeks, the *sine qua non* of "related services" is the "developmental, corrective, and other supportive services" needed for Plaintiff, in particular, to benefit from "special education." 20 U.S.C. § 1401(26)(A). Thus, as a matter of law, relief under the IDEA is available to Plaintiff.

## IV. Conclusion

At bottom, the IDEA gives the "primary responsibility" "for choosing the educational method most suitable to the child's needs . . . to state and local educational agencies in cooperation with the parents or guardian of the child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982). "Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes." *Fry*, 137 S. Ct. at 749. "The federal courts are not the entities best equipped" to resolve these disputes in the first instance. *See Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 434 (6th Cir. 2006). "Exhaustion is necessary to give effect to the backbone of the IDEA: to efficiently and effectively accommodate the education needs of children with disabilities through cooperation with their parents and the local education agency." *F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018) (citation omitted). For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 25]. An appropriate judgment shall enter.

IT IS SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge