UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JANE DOE, *the student; by and through her parents,* K.M. and A.M.; | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 3:22-cv-63-KAC-DCP |
| KNOX COUNTY BOARD OF EDUCATION; | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on Defendant Knox County Board of Education's ("KCBOE") "Motion for Summary Judgment" [Doc. 94-1]. For the reasons provided below, the Court **GRANTS in part and DENIES in part** Defendant's "Motion for Summary Judgment" [Doc. 94-1]. The only remaining claims are Plaintiff's ADA Discrimination Reasonable Accommodation claim and Rehabilitation Act Discrimination Reasonable Accommodation claim.

I.   **Background[1]**

    **A. Factual Background**

During the 2021-2022 school year, Plaintiff Jane Doe was a ninth-grade student at L&N Stem Academy ("L&N") in the Knox County School System [*See* Doc. 94-4 at 56-57 (504 Grievance form Accommodation Request Response ("504 Grievance Response") at 1-2)].

---

[1] Because Plaintiff is the non-moving Party, the Court describes the facts in the light most favorable to her. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

1

Doe has misophonia [*See id.* at 57]. "Misophonia is a medical condition, initially coined in 2001, where patients suffer from heightened autonomic nervous system arousal (extreme anger, irritation, escape behavior, disgust) when confronted with specific sounds, often eating sounds, but not exclusively eating sounds." [Doc. 95-2 at 2 (Declaration of Eric Storch ("Storch Decl.") ¶ 5)]. Doe's condition manifests as "an extreme [re]action to hearing normal sounds of eating gum and chewing food," resulting in her "misinterpret[ing] certain repetitive human-generated sounds" [*See* Doc. 95-11 at 8 (Deposition of Jane Doe ("Doe Dep.") 29:20-25); *see also* Doc. 95-29 at 1 (10/22/2021 Email to Melissa Walsh)]. When Doe's misophonia "is triggered, it sends her into a fight or flight instance" that is "hard for her to control" [Doc. 95-16 at 1 (S-Team Meeting Results ("S-Team Results"))]. "When she is in a classroom and is triggered, there is no instruction or learning that is happening[,] and she is instead there is [sic] panic" [*Id.*]. Doe states that she "miss[ed] about half her educational time at L&N" because her misophonia caused her to leave class [*See* Doc. 95-11 at 45 (Doe Dep. 174:17-19; 240: 6-11)].

In early fall 2021, Plaintiff Jane Doe and her parents K.M. and A.M. requested "an accommodation of a ban on eating and chewing gum during [Doe's] . . . academic and extracurricular classes" and "environments" [*See* Doc. 94-4 at 56, 57 (504 Grievance Response at 1, 2)]. Doe states that this request extended to L&N's "Genius Hour[s]" [*See* Doc. 95-11 at 9 (Doe Dep. 32:25-33:4)]. "Genius Hours" are elective periods for students where classes or clubs meet to allow students to pursue their own interests beyond the traditional school curriculum, with the students voting on the "focus" of the hour [*See* Doc. 94-2 at 8 (Declaration of James Allen ("Allen Decl.") ¶¶ 31-32)]. These periods are "purposefully scheduled to overlap with lunch to maximize student social engagement while minimizing the impact on the academic schedule"

2

[*See id.* (Allen Decl. ¶ 33)]. And these hours are a "unique and critical part" of L&N's curriculum [*See id*. (Allen Decl. ¶ 31)].

On September 3, 2021, L&N denied Plaintiff's requested accommodation but provided various other accommodations [*See* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. L&N relied in part on the opinion of Daphne Odom, the Knox County Board of Education 504 Coordinator [*See* Doc. 94-3 at 102-04, 111-12 (Deposition of Daphne Odom ("Odom Dep.") 17:20-25; 19:19-22:22; 61:24-62:4); *see also* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. In addition, the medical documentation that Doe initially provided L&N about her misophonia failed to recommend a ban on eating or drinking in Doe's classrooms [*See* Doc. 94-3 at 20, 21 (Doe Dep. 155:16-18; 159:2-4)].

One of Doe's parents responded on December 8, 2021, requesting a ban on eating and chewing gum in Doe's "academic classes and extracurricular environments" because "these sounds trigger [Doe's] misophonia" [*See* Doc. 94-4 at 57 (504 Grievance Response at 2)].

Defendant replied on January 3, 2021, denying the requested accommodation [*See id.* at 59 (504 Grievance Response at 4)]. L&N Principal James Allen "opted to leave decisions regarding food in the classroom to individual teachers" [Doc. 94-2 at 5 (Allen Decl. ¶ 17)]. Vice Principal Melissa Walsh emailed Doe's teachers stating that the "change we need to make is no gum in the classroom" but L&N "will still allow food and drink, but no parties, potlucks, or candy distribution" [*See* Doc. 95-28 at 1-2 (August 12, 2021 Walsh Email)]. It is undisputed that in approximately "**six** out of eight periods," Doe's teachers "*de facto* provided" her requested ban on food and chewing gum in class [*See* Docs. 94-1 at 5, n.7; 95 at 13-14].

During the fall of 2021, KCBOE superintendent Jon Rysewyk created a "Special Education Task Force" [*See* Doc. 95-12 at 7-8 (Deposition of Jon Rysewyk) ("Rysewyk Dep.") 24:4-26:17);

3

*see also* Doc. 95-25 at 1 (Special Education Task Force Recommendation at 1)].  The work of the Special Education Task Force culminated with the Task Force submitting a report and recommendations to Rysewyk regarding how KCBOE could improve special education in Knox County [*See* Doc. 95-12 at 7-8 (Rysewyk Dep. 24:4-26:17); *see also* Doc. 95-25 at 1 (Special Education Task Force Recommendation at 1)].

After L&N denied Plaintiff's specific requested accommodation, it offered that Plaintiff "may submit new information" or "appeal the decision" [Doc. 94-4 at 59 (504 Grievance Response at 4)].  Plaintiff did not [*See* Doc. 95-11 at 8 (Doe Dep. 274:16-18); *see also* Doc. 95-14 at 39 (Deposition of K.M. ("K.M. Dep.") 152:25-153:1-10)].  Plaintiff filed suit on February 17, 2022 [*See* Doc. 1].

After Plaintiff filed suit, two (2) members of KCBOE, Kristi Kristy and Betsy Henderson, posted about the suit on social media [*See* Doc. 95-19 at 2-6 (Ethics Complaint at 2-6)].  Kristy stated in her post "Hashtag gum gate is really a thing, compliments of the same law firm responsible for the mandatory mask mandate in KCS" [*See id.* at 6].  Henderson posted "from the lawyers who brought you forced masking, they want to ban chewing in classrooms.  I wish I was kidding" [*See id.*].  Members of the public commented on the social media posts [*See id.* at 2-6].  A member of the public also filed an ethics complaint with KCBOE about the Board members' posts [*See* Doc. 95-19 (Ethics Complaint)]. The Full Board dismissed the ethics complaint due to the "strained political status of the community" [*See* Doc. 95-24 at 12-13 (Knox County Board of Education Regular Session Minutes at 12-13)].

Doe also received disparaging comments from her classmates and the public after she filed suit [*See* Doc. 95-11 at 28 (Doe Dep. 108:15-109:3); *see also* Doc. 95-19 at 3-5 (Ethics Complaint at 3-5)].  In each instance where Doe or her parents reported Doe being bullied by a fellow L&N

4

student, Defendant, through members of L&N staff, investigated the matter [*See, e.g.*, Doc. 94-2 at 57-62 (Bullying Investigation Documents) (noting that there is at least one instance where an L&N student passed out chewing gum to determine the identity of the student with the sensitivity to chewing sounds)].

### B. Procedural Background

On April 10, 2023, Plaintiff filed a Third Amended Complaint alleging various claims against Defendant under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983 [Doc. 61]. Count One raises a Section 1983 claim for retaliation in violation of the First Amendment [*See id.* at 25]. Count Two is a claim for discrimination and retaliation under the Rehabilitation Act [*See id.* at 26]. Count Three is a claim for discrimination and retaliation under the ADA [*See id.* at 27-28]. Count Four is a claim for harassment under the Rehabilitation Act and the ADA [*See id.* at 29]. Count Five raises a Section 1983 claim for violation of the Fourteenth Amendment's Equal Protection Clause [*See id.* at 30]. And Count Six raises a Section 1983 claim for violation of the "right to bodily integrity" under the Fourteenth Amendment [*See id.* at 34].

As part of the ongoing litigation, two purported expert witnesses provided evidence regarding Plaintiff's requested accommodation and the reasonableness of her requested accommodation. Dr. Eric Storch opined that "a rule preventing eating and chewing gum in the classroom is the necessary accommodation for Jane Doe" [Doc. 95-2 at 4-5 (Storch Decl. ¶ 11)]. He concluded that "[i]f chewing and eating in the academic setting is medically *necessary* for another student(s), then use of physical distancing, like a seating chart, may be attempted" [*Id.*]. Dr. M. Zachary Rosenthal agreed with Dr. Storch and added "[f]or Jane Doe's academic classrooms, an enforced limitation on gun chewing and eating food should be in place" [Doc. 94-

4 at 92, 94 (Declaration of M. Zachary Rosenthal ("Rosenthal Decl.") at 3)]. He also offered that "students must eat lunch or breakfast, of course, so designated areas (a school cafeteria if it exists, or other designated areas in the absence of a school cafeteria) and times or consumption should be enforced" [*Id.* at 94 (Rosenthal Decl. at 3)].

In contrast, Defendant, through Principal Allen, provided that implementing Doe's requested accommodation would require L&N's "entire master schedule" to change [Doc. 94-2 at 7 (Allen Decl. ¶ 25)]. This would include "either shorten[ing] or eliminat[ing] several classes per semester" to "schedule a total of eight lunch periods in the Commons, the only area large enough to be a 'designated' eating area" [*Id.* at 5-9 (Allen Decl. ¶¶ 20-35)]. This is because L&N lacks a cafeteria, and the largest room in the building could only hold seventy-eight (78) students at a time [*See id.* at 6 (Allen Decl. ¶ 22)]. And "[i]n Tennessee students are required to have a minimum of twenty-five (25) minutes to each lunch" [*See id.* at 9 (Allen Decl. ¶ 27)].

On June 18, 2024, Defendant moved for summary judgment on all of Plaintiff's claims [Doc. 94-1]. Plaintiff opposed [*See* Doc. 95]. Defendant filed a reply [*See* Doc. 97]. And Plaintiff filed a surreply [*see* Doc. 99-1].

## II.    <u>Analysis</u>

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the facts in the light most favorable to the nonmoving party and makes all reasonable inferences that can be drawn from those facts in her favor. *Matsushita*, 475 U.S. at 587; *Nat'l Satellite Sports*, 253 F.3d at 907. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden,

6

the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586); *see also* Fed. R. Civ. P. 56(c)(1). A dispute over a material fact is a "genuine issue" where a reasonable jury could find for the nonmoving party on that issue. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[C]onclusory and unsupported allegations, rooted in speculation, do not meet [the summary judgment] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).

## A. Plaintiff's Claims Under the ADA and Rehabilitation Act (Counts Two, Three, and Four).

### 1. Plaintiff's ADA Discrimination Claim (Part of Count Three).

As an initial matter, Defendant raises the affirmative defense of "fundamental alteration" in support of its motion for summary judgment on Plaintiff's ADA Discrimination claim [*See, e.g.*, Doc. 94-1 at 23 (referring to a "substantial alteration" in L&N's operations)]. *See Hindel v. Husted*, 875 F.3d 344, 348 (6th Cir. 2017) ("[F]undamental alteration is an affirmative defense under the ADA providing that governmental entities need not accommodate disabled individuals if doing so would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens") (cleaned up). Defendant did not clearly raise "fundamental alteration" as an affirmative defense in its Answer [*See* Doc. 64]. And Plaintiff appears to argue that some "waiver" or penalty may be in order [*See* Doc. 95 at 23]. Not so.

Rule 8(c)(1) requires a defendant to state certain affirmative defenses in its answer. *See* Fed. R. Civ. P. 8(c)(1). But a district court has discretion "to allow a defendant to raise" a "defense for the first time in a motion for summary judgment if doing so does not result in surprise or prejudice to the plaintiff." *See Rogers v. IRS*, 822 F.3d 854, 856 (6th Cir. 2016) (quoting

7

*Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 573 (6th Cir. 2014)) (allowing defendant to raise an affirmative defense at summary judgment). Indeed "the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (quoting *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).

Here, Plaintiff is neither surprised nor prejudiced by Defendant's assertion of the fundamental alteration defense at summary judgment. During the course of this litigation, Defendant asserted that it could not provide Doe's requested accommodation without a fundamental alteration of L&N's operations [*See, e.g.,* Doc. 44; *see also* Doc. 94-2 at 7 (Allen Decl. ¶ 24)]. When this matter was before the United States Court of Appeals for the Sixth Circuit on appeal, the issue of fundamental alteration was raised. *See Doe v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1076, 1078-79 (6th Cir. 2023). Plaintiff conducted discovery regarding Defendant's assertion that her accommodation would fundamentally alter its operations [*See* Doc. 97 at 9-10]. Thus, Plaintiff had actual notice of Defendant's argument and had ample opportunity to respond to it. *See Stupak–Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003) ("Because the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument, we find that the plaintiffs suffered no prejudice and, therefore, the government did not waive their defense"). Therefore, the Court considers Defendant's fundamental alteration defense.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12312. The ADA "allow[s] disabled individuals to sue certain entities, like school districts, that exclude them from participation in, deny them benefits of, or discriminate

8

against them in a program because of their disability." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016) (citing *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)). A plaintiff may raise two types of discrimination claims under Title II of the ADA: "claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). Plaintiff relies on both theories [*See* Doc. 95 at 31, 8]. The Court analyzes each in turn.

### a. Plaintiff's Intentional Discrimination Claim.

A plaintiff alleging intentional discrimination under Title II of the ADA must show that the alleged discrimination was "because of" a disability.[2] *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 325 (6th Cir. 2023). A plaintiff "must 'present evidence that animus against the protected group was a significant factor in' the discriminatory conduct." *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *5 (6th Cir. Aug. 3, 2022) (citing *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc)) (citing *Anderson*, 798 F.3d at 357) (quoting *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)). This requires Plaintiff to provide "enough evidence of discrimination to persuade a reasonable jury that animus was a but-for cause of the challenged act." *See Gohl*, 836 F.3d at 683. Plaintiff can "use

---

[2] To establish a prima facie case of intentional discrimination, a plaintiff must also show that "(1) she has a disability" and "(2) she is otherwise qualified;" *see Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *5 (6th Cir. Aug. 3, 2022), but neither element is in dispute here, [*see* Doc. 94-1 at 15-22].

9

direct or indirect evidence of discrimination" to assert this claim. *See Bennett*, 86 F.4th at 325. Here, Plaintiff relies on both [*See* Doc. 95 at 31-36]. Both fail.

Starting with her direct evidence theory of intentional discrimination, direct evidence is evidence that "does not require the factfinder to make any inferences before concluding that unlawful discrimination happened." *Gohl*, 836 F.3d at 682. It must tend to show that "the discrimination was intentionally directed toward him or her [the individual with the alleged disability] in particular." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008), *abrogated on other grounds by Anderson*, 798 F.3d 338.

Plaintiff fails to identify sufficient direct evidence of intentional discrimination to avoid summary judgment. *See Bennett*, 86 F.4th at 325; *see also Gohl*, 836 F.3d at 682; *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 916 (6th Cir. 2013) (applying this standard in the Title VII context). She relies on two emails to support her argument [*See* Doc. 95 at 31; *see also* Docs. 95-28 at 1-2 (August 12, 2021 Walsh Email); 95-30 at 1 (September 6, 2022 Email from Daphne Odom)]. Plaintiff posits that these emails show "direct evidence" of intentional discrimination because "Walsh instructed teachers not to make the food accommodation" and "Odom created a 100% rule based upon the nature of the disability and accommodation" [*See* Doc. 95 at 31 (emphasis omitted)]. But these emails do not show that Defendant had any animus against individuals with misophonia. *See Douglas*, 2022 WL 3088240, at *5. Nor are they enough to permit a reasonable jury to conclude that any animus "was a but-for cause" of the decision not to grant Plaintiff's requested accommodation. *See Gohl*, 836 F.3d at 683; *see also A.C. ex rel. J.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 697 n.3 (6th Cir. 2013) ("[D]irect evidence of discrimination is, for instance, when an employer says[,] 'I fired you because you are disabled'"

10

(quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998))).  Accordingly, Plaintiff's direct evidence theory of intentional discrimination fails.

In the alternative, Plaintiff relies on purported indirect evidence of discrimination, invoking the familiar *McDonnell Douglas* burden-shifting framework [*See* Doc. 95 at 31-32].  Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See Bennett*, 86 F.4th at 325.  "[T]o show the third prong of the prima facie case, a plaintiff 'must present evidence that animus against the protected group was a significant factor in the position taken by the . . . decision-makers themselves or by those to whom the decision-makers were knowingly responsive.'" *Id.* (citing *Anderson* 798 F.3d at 357).  If a plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a "legitimate, nondiscriminatory reason" for its action.  *Id.*  If a defendant proffers such a reason, the burden shifts back to the plaintiff to show that the "proffered reason is merely a pretext for unlawful discrimination." *Id.*

Here, even Plaintiff's indirect evidence fails to show that Defendant discriminated against Doe **because of** her disability.  *See Gohl*, 836 F.3d at 683-84.  Plaintiff asserts that Defendant discriminated against Doe by failing to ban chewing gum and food in her classrooms [*See* Doc. 95 at 32].  But she fails to identify sufficient evidence in the record to show that Defendant's actions were motivated because of Doe's disability.  *See Bennett*, 86 F.4th at 325-26.

*Anderson v. City of Blue Ash* illustrates this line. 798 F.3d 338 (6th Cir. 2015).  There, under the *McDonnell Douglas* framework, the Sixth Circuit assessed whether an ordinance prohibiting the presence of farm animals at a private residence intentionally discriminated against an individual who used a miniature horse as a service animal.  *Id.* at 348.  Although the record showed that the City passed the ordinance because of the horse and other farm animals on the plaintiff's property, the Court concluded that this evidence failed to show that the City passed the

11

ordinance "because [plaintiff] is disabled." *See id.* at 359. Rather, the evidence supported a conclusion that the City passed the ordinance because of citizen complaints regarding the animals, not the plaintiff's disability. *Id.* Similarly, here, there is ample undisputed evidence of Defendant's reasons for rejecting Plaintiff's requested accommodation, none of which are because of Doe's disability [*See, e.g.,* Docs. 94-3 at 102-04, 111-12 (Odom Dep. 17:20-25; 19:19-22:22; 61:24-62:4); 94-4 at 56-57 (504 Grievance Response at 1-2); 94-2 at 7-8 (Allen Decl. ¶¶ 25-31); 94-3 at 5, 21, 32 (Doe Dep. 42:1-11; 45:1-7; 159:16-24; 220:7-14)].

Indeed, Defendant offered Doe various other accommodations for her disability [*See* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. Further, Defendant relied in part on Knox County Board of Education 504 Coordinator Odom's opinion in deciding what accommodations would best serve Doe, while maintaining the character of L&N [*See* Doc. 94-3 at 102-04, 111-12 (Odom Dep. 17:20-25; 19:19-22:22; 61:24-62:4)]. This underscores a lack of intentional discrimination. *See Finley v. Huss*, 102 F.4th 789, 825 (6th Cir. 2024) (noting that a Defendant cannot engage in "intentional discrimination by enforcing broadly applicable . . . rules while relying on a medical professional's opinion that the disability and conduct were distinct").

Even if Plaintiff established her prima facie case, Defendant proffered at least one legitimate, nondiscriminatory reason for its actions—that the requested ban would require L&N to fundamentally alter its operations to remain in compliance with state law [*See, e.g.*, Doc. 94-2 at 5-9 (Allen Decl. ¶¶ 20-35)]. *See Bennett*, 86 F.4th at 325. And Plaintiff has not offered evidence that would permit a jury to reasonably infer that this is pretext for discrimination, rather than a disagreement regarding the appropriateness of Doe's requested accommodation [*See* Doc. 95 at

12

34-36].  Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA intentional discrimination claim.

### b. Reasonable Accommodation Claim.

In contrast, to establish a reasonable accommodation claim under the ADA, a plaintiff must show that "she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of" her disability.  *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008).  The ADA "does not require a plaintiff to receive her preferred accommodation but merely a reasonable one that provides meaningful access' to the public entity." *Bennett*, 86 F.4th at 326 (quotations and citations omitted).  "[T]he 'determination of what constitutes [a] reasonable [accommodation] is highly fact-specific, requiring case-by-case inquiry.'" *Id.* (alterations in original) (quoting *Roell*, 870 F.3d at 489).  If after "[v]iewing all facts and drawing all reasonable inferences in" the nonmoving party's favor, "disputed issues of material facts exist" as to the reasonableness of a requested accommodation, those disputes "preclude summary judgment." *See Anderson,* 798 F.3d at 356.  Defendant raises three arguments for summary judgment.  Each fails at this stage of the litigation.

*First*, Defendant argues that Plaintiff's requested accommodation is unreasonable because it would require "a substantial and fundamental alteration" to L&N's services, programs, and activities [*See* Doc. 94-1 at 24-25].  "'Fundamental alteration' is an affirmative defense under the ADA" on which Defendant bears the burden of proof.  *See Hindel*, 875 F.3d at 347-48.  Thus, Defendant "has the burden of *proving* that compliance" with an accommodation would "result in a fundamental alteration." *Id.* at 348 (cleaned up).  "To prevail . . . defendant has the burden of

13

production and persuasion to prove that . . . [the] proposed accommodation . . . would fundamentally alter" the relevant services, programs, or activities. *See id.*

Here, Principal Allen describes in depth the significant changes to L&N's "entire master schedule," including "either shorten[ing] or eliminat[ing] several classes per semester" to "schedule a total of eight lunch periods in the Commons," that he believes would be needed to implement Plaintiff's requested accommodation [Doc. 94-2 at 5-9 (Allen Decl. ¶¶ 20-35)]. Plaintiff's experts see it differently. Dr. Storch asserts that more limited changes are necessary— a "rule preventing eating and chewing gum in . . . [Jane Doe's] classroom" with "use of physical distancing, like a seating chart" "[i]f chewing and eating in the academic setting is medically *necessary* for another student(s)" [Doc. 95-2 at 4-5 (Storch Decl. ¶ 11)]. Dr. Rosenthal agrees with Dr. Storch about the need for the requested accommodation in the classroom but also suggests that "designated areas" and "times for consumption should be enforced" [Doc. 94-4 at 94 (Rosenthal Decl.)].

The suggestion that a more limited alteration may be possible finds some further support in the record [*See* Docs. 95-10 at 15 (Deposition of James Allen ("Allen Dep.") 55:4-14, 57:6-23), 95-15 at 14 (Deposition of Melissa Walsh ("Walsh Dep.") 51:3-17)]. Viewing the facts in the light most favorable to Plaintiff, as the Court must at this stage in the litigation, before Plaintiff's request was denied, L&N implemented a rule requiring no gum chewing in Jane Doe's classes [Doc. 95-28 at 1 (August 12, 2021 Walsh Email) ("<u>The other change we need to make is no gum in the</u> <u>classroom.</u> We will still allow food and drink, but not parties, potlucks, or candy distribution")]. L&N "opted to leave decisions regarding food in the classroom to individual teachers." [Doc. 94-2 at 5 (Allen Decl. ¶ 17); *see also* Doc. 95-28 at 1 (August 12, 2021 Walsh Email)]. "Jane Doe's requested accommodation" of no food and gum chewing in her academic classrooms "was *de facto*

14

provided" in "six out of eight [class] periods" [Docs. 94-1 at 5 n. 7 (citations omitted); 95 at 13-14]. This was done without the significant alterations that L&N now claims would be necessary to make the accommodation request [*See, e.g.,* Docs. 95-10 at 6, 9 (Allen Dep. at 20:8-11; 33:1-13); 95-15 at 11, 13, 14, 21 (Walsh Dep. 40:13-17, 47:3-11, 51:3-17, 52:1-53:15, 80:20-81:8)].

This leaves a genuine dispute of material fact regarding whether Plaintiff's requested accommodation was reasonable and whether it would constitute a material alteration of L&N's services, programs, and activities. At this stage in the litigation, this Court is not permitted to "weigh the evidence or make credibility determinations." *See Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021); *see also Anderson*, 798 F.3d at 356. The law leaves these genuine disputes of material fact to a jury—not the Court.

*Second*, Defendant argues that L&N could not "effectively offer Jane Doe her requested accommodation," and therefore the accommodation was unreasonable as a matter of law [*See* Doc. 94-1 at 28]. This argument is based on Defendant's assessment that teachers at L&N could not enforce the requested accommodation with precise accuracy and record evidence that even when the proposed accommodation was provided at another school, Jane Doe had to "leav[e] class 2-4 times a day due to her misophonia triggers" [*See id.* at 29-30]. The ADA, however, requires "reasonable" accommodations, not perfect ones. *See Bennett*, 86 F.4th at 326. Reasonable accommodations are designed to provide "meaningful access" to the program or service, not perfect access. *See id.* (quoting *Ability Ctr. Of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004)). Even a reasonable accommodation may not be able to completely remedy a disability. And viewed in the light most favorable to Plaintiff, there is evidence in the record that Jane Doe did better in academic classes where her request for no eating was provided, *de facto* or otherwise [*See* Docs. 94-1 at 5 n. 7; 94-4 at 24 (HS Transcript pre2022

15

List- All Records 5/11/2023), 34-40 (Academics Fall Semester 1 Term 1 Comments at 1-7), 41 (9th Grade Term 1 Grade Report), 42-49 (Academics Spring Semester 2 Term 2 Comments at 1-7); 95-11 at 13, 41, 44 (Doe Dep. 46:21-12, 160:22-161:15, 171:3-174:25); 95-14 at 22 (K.M. Dep. 65:1-25)].

*Finally*, Defendant "asserts that a reasonable accommodation is inherently *un*reasonable when it impedes the rights of others" [Doc. 94-1 at 31]. This is an overstatement of Sixth Circuit precedent. *See Davis v. Echo Valley Condominium Assoc.*, 945 F.3d 483, 492 (6th Cir. 2019) (noting that courts may also "reject requested changes that interfere with the rights of third parties"). And it does not carry the day here. An accommodation that impacts a third party's rights may be reasonable, and it may be unreasonable. Reasonableness is the crux of the relevant inquiry. *See Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1230-31 (6th Cir. 2022). Accordingly, the Court **DENIES** Defendant's request for summary judgment on Plaintiff's ADA Discrimination Reasonable Accommodation claim.

### 2. Plaintiff's Rehabilitation Act Discrimination Claim (Part of Count Two).

The result is the same for Plaintiff's Rehabilitation Act Discrimination claim. The Rehabilitation Act states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Rehabilitation Act generally applies the same prohibitions as Title II of the ADA to any federally funded "program or activity." *See E. Ky. Univ.*, 532 F.3d at 452-53. But the "Rehabilitation Act's causation standard differs from the ADA's: the ADA requires that discrimination occur 'because of' a plaintiff's disability, and the Rehabilitation Act requires that it occur 'solely because of' a plaintiff's disability." *Douglas*, 2022 WL 3088240, at

16

*5 (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc)). Thus, the Rehabilitation Act may require a further showing: "not just that their *preferred* accommodation was reasonable but also that the *provided* accommodation was unreasonable," *see Doe*, 56 F.4th at 1088 (citations omitted), "giving due regard to the 'professional judgment' of school administrators," *id.* (citations omitted).

The above analysis of Plaintiff's ADA discrimination claim holds here. And to the extent a further showing is required under the Rehabilitation Act, Plaintiff has raised a genuine dispute of material fact as to the reasonableness of Defendant's provided accommodations. Dr. Storch opined that many of the accommodations L&N provided to Doe "would be ineffective" and "insufficient" to meet her needs [Doc. 95-2 at 5 (Storch Decl. ¶ 12); *see also* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. Without weighting credibility, a jury may infer that an "ineffective" or "insufficient" accommodation is also an unreasonable accommodation. And it appears that KCBOE 504 Coordinator Odom initially misunderstood the scope of Plaintiff's accommodation request [*See* Doc. 95-9 at 6 (Odom Dep. 21:6-12)]. A jury could reasonably infer that the misunderstanding is pertinent, and give less regard to the "professional judgment" of Odom as to the reasonableness of accommodations requested and provided. *See Doe*, 56 F.4th at 1088 (citations omitted). As before, the law leaves these genuine disputes of material fact to a jury. *See Anderson,* 798 F.3d at 356. Accordingly, the Court **DENIES** Defendant's request for summary judgment on Plaintiff's Rehabilitation Act Discrimination Reasonable Accommodation claim.

### 3. Plaintiff Cannot Recover Monetary Damages For Her ADA Or Rehabilitation Act Discrimination Claims.

In any event, Plaintiff cannot recover compensatory damages for her ADA or Rehabilitation Act discrimination claim. It is well settled in this Circuit that a party seeking

17

compensatory damages under the ADA or Rehabilitation Act must make a showing of intent by the defendant. *See Johnson v. City of Saline*, 151 F.3d 564, 572-73 (6th Cir. 1998) (ADA); *See Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir. 1996) (Rehabilitation Act). But the Sixth Circuit has not conclusively determined what level of intent is required. *Compare R.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 925 (6th Cir. 2016) ("assum[ing] without deciding that the parties are correct" in their agreement that "deliberate indifference" is needed to obtain monetary damages under the ADA); *and Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 n.2, 743 (6th Cir. 2008) (declining to decide the "level of requisite intent" because the parties agreed on the law); *with Douglas*, 2022 WL 3088240, at *17 (Bush, J., dissenting) (concluding that "[w]e are bound by our prior precedent, which requires discriminatory animus, not deliberate indifference, as the requisite intent for compensatory damages" (citing *Gohl*, 836 F.3d at 693)).

Even presuming that the lower deliberate indifference standard is enough to claim compensatory damages, Plaintiff has not identified facts that would permit a reasonable jury to conclude that Defendant was deliberately indifferent toward her federally-protected right. To establish deliberate indifference, Plaintiff must show that Defendant had "knowledge that a harm to a federally protected right is substantially likely" and "fail[ed] to act upon that likelihood." *See Douglas*, 2022 WL 3088240, at *8. "The requisite knowledge is shown" if "the plaintiff has alerted the public entity to his need for accommodation." *Id.* "[A] showing of heightened negligence does not suffice to prove deliberate indifference," but "it is enough that a plaintiff has given the public entity the information necessary to understand the need for and reasonableness of the requested accommodation." *Id.* "A party acts with deliberate indifference if it disregards a 'known or obvious consequence' of its actions, namely that its actions will violate the plaintiff's

18

federally-protected rights." *Scott Cnty., Ky.*, 637 F. App'x at 925 (quoting *Bd. Of Cty. Comm'rs of Bryan Cty, Okl. v. Brown*, 530 U.S. 397, 410-11 (1997)).

Plaintiff makes two arguments in an attempt to satisfy this standard [*See* Doc. 95 at 29-31]. ***First***, she argues that deliberate indifference can be inferred because "Walsh told Doe's teachers *not* to ban food in Jane Doe's classrooms, and Odom, the 504 Coordinator, created a "100% guarantee barrier" [*See* Doc. 95-28 at 1-2 (August 12, 2021 Walsh Email); *see also* Doc. 94-3 at 102 (Odom Dep. 17:20-25)]. But this falls short. When Defendant denied Plaintiff's request for an accommodation, it lacked knowledge that a harm was substantially likely. *See Brown*, 520 U.S. at 410-11. The medical documentation Doe initially provided L&N about her misophonia did not recommend a ban on eating in Doe's classrooms [*See* Doc. 94-3 at 20, 21 (Doe Dep. 155:16-18; 159:2-4)]. And the evidence Plaintiff identified would not allow a jury to reasonably infer that Defendant had "the information necessary to understand the need for and reasonableness of" the accommodation Doe requested. *See Douglas*, 2022 WL 3088240, at *8. This is underscored by the various other accommodations that L&N provided to Doe once she made her initial request [*See* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. *See Hill*, 295 F. App'x at 742-43.

***Second***, Plaintiff argues that the jury could infer deliberate indifference from the recommendations in the Special Education Task Force's Report [*See* Doc. 95 at 30; *see also* Docs. 95-12 at 7-8 (Rysewyk Dep. 24:4-26:17); 95-25 at 1 (Special Education Task Force Recommendation at 1)]. But this too fails to permit an inference of knowledge or a failure to act with respect to Doe because the Report does not relate to Plaintiff's request for an accommodation, nor does it indicate that a harm to Plaintiff was substantially likely. The Report relayed "Recommendations for Knox County Schools (KCS) to improve special education support and services for students and families" and was cabined to "special education," [*see* Doc. 95-25 at 1

19

(Special Education Task Force Recommendation at 1)], a legal entitlement that Plaintiff has disclaimed in this case, *see Doe*, 56 F.4th at 1085 ("A ban on eating and chewing is neither 'special education' nor a 'related service'" (citation omitted)). Further, the Report did provide that "[t]he Task Force and the data [collected] identified a multitude of problem areas and challenges that persist across schools in Knox County in all aspects of special education" [*See* Doc. 95-25 at 1 (Special Education Task Force Recommendation at 1)]. But the Report cannot be said to have informed Defendant of a substantial likelihood of harm to Doe—it does not address Plaintiff's specific requested accommodation [*See id.*; *see also* Doc. 94-4 at 56-57 (504 Grievance Response at 1-2)]. Accordingly, Plaintiff cannot recover compensatory damages for her ADA or Rehabilitation Act Discrimination Reasonable Accommodation claims.

### 4. Plaintiff's Retaliation Claims Under the ADA and Rehabilitation Act (Part of Counts Two and Three).

Both the ADA and the Rehabilitation Act prohibit retaliation against any individual because she opposed a practice made unlawful by the Act or otherwise sought to enforce rights under the Act. *See, e.g.*, 42 U.S.C. § 12203 and 28 C.F.R. 35.134 (ADA); 29 U.S.C. § 794(a) and 29 C.F.R. § 33.13 (Section 504 of the Rehabilitation Act). The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both. *See Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997); *accord Burns v. City of Columbus*, 91 F.3d 836, 842 (6th Cir. 1996). Because Plaintiff does not assert direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). To assert a prima facie case for retaliation here, Plaintiff must show that she (1) "engaged in protected activity under the" ADA and Section 504; (2) " [D]efendant knew of the protected activity;" (3) "[D]efendant took an adverse action" against Plaintiff; and (4) "there was a causal connection between the adverse action" and Plaintiff's

20

"protected activity." *See id.* If Plaintiff establishes a prima facie case, the burden "shifts to the [D]efendant to show that it had a legitimate, non-discriminatory basis for the adverse action." *Id.* If Defendant does so, the burden shifts back to Plaintiff "to show by a preponderance of the evidence" that Defendant's proffered reasons "were not its true reasons, but were a pretext for retaliation." *Id.*

"[A]dvocating for members of a protected class" is "a protected activity for purposes of retaliation claims." *Id.* at 662 (citations omitted). This includes making a reasonable request for an accommodation. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). And Defendant does not dispute the first two elements of Plaintiff's prima facie case. But the crux of the issue as to the prima facie case is that there is no casual connection between any alleged adverse action taken by Defendant and Plaintiff's identified protected activity. Under the law, the alleged adverse action must be taken against the individual who engaged in the protected activity. *See Kirilenko-Ison*, 974 F.3d at 661. "To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *Shelby Cnty. Bd. of Educ.*, 711 F.3d at 698 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). And to show causation, Plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Kirilenko-Ison*, 974 F.3d at 664 (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)).

Here, Plaintiff has not demonstrated a connection between an alleged adverse action taken by Defendant and Plaintiff's identified protected activity sufficient to support the claim. Plaintiff's stated position at summary judgment is that Defendant denied her accommodation request and that the "renewal [of that "adverse position"] combined with the lack of an effective alternative . . . is

21

[the] adverse" action [*See* Doc. 95 at 51]. But Plaintiff has not identified evidence that would allow the inference that the "adverse action"—the continued denial of her accommodation request—"would not have been taken" by Defendant "absen[t]" her alleged "protected activity"—making her accommodation request and advocating on her behalf. *See Kirilenko-Ison*, 974 F.3d at 661. That is, Plaintiff has not presented evidence suggesting that Defendant denied her accommodation request because she made it or because Doe and her parents advocated for the accommodation.

Moreover, even if Plaintiff made her prima facie case, the burden shifts to Defendant to establish a legitimate, non-discriminatory basis for the adverse action. *See Kirilenko-Ison*, 974 F.3d at 661. Defendant's alleged material alteration of L&N's operations is sufficient to meet this burden. And Plaintiff does not attempt to demonstrate pretext as to these claims [*See* Doc. 95 at 51-52]. *See id.*; *see also Bennett*, 86 F.4th at 324.

Additionally, to the extent that Plaintiff intended to rely on the social media posts of Board Members Kristy and Henderson and alleged "'peer' harassment" by other students as the adverse actions that support her retaliation claims, Plaintiff has not presented evidence sufficient to show that Defendant KCBOE is liable for those actions [*See* Doc. 95 at 51-52; *see also* Doc. 94-1 at 37-38]. *See Bennett*, 86 F.4th at 324 (nothing that when a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited). As such, even if the social media posts or the alleged "peer harassment" could qualify as "adverse actions," there is not a basis to attribute those actions to Defendant as it relates to the retaliation claims. *Id.* Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claims under the ADA and Rehabilitation Act.

22

### 5. Plaintiff's Harassment Claim Under the ADA and Rehabilitation Act (Count Four).

For her disability-based harassment claim (Count Four), Plaintiff asserts peer-on-peer harassment and board-on-student harassment [*See* Doc. 95 at 36]. And she asserts teacher-on-student harassment at summary judgment, despite not clearly doing so in her Third Amended Complaint [*See* Doc. 95 at 36 (referencing actions by "school staff"), 38, 43; *see also* Doc. 61 at 30]. Despite failing to clearly raise a teacher-on-student harassment claim in her Third Amended Complaint, the Court addresses each of Plaintiff's theories of harassment.

To establish that a school, or board of education, is liable for disability-based harassment, a student must show that (1) she was an individual with a disability, (2) she was harassed based on her disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of her education and created an abusive educational environment, (4) the school knew about the harassment, and (5) the school was deliberately indifferent to the harassment. *E. Ky. Univ.*, 532 F.3d at 454 (importing the Title IX sexual harassment inquiry into ADA and Rehabilitation Act contexts). The parties do not dispute that Doe is disabled.

As it relates to her peer-on-peer harassment theory, Plaintiff presents sufficient evidence to establish a genuine dispute of material fact as to whether some of Doe's peers harassed her in a way that was sufficiently severe or pervasive [*See, e.g.,* Doc. 94-2 at 57-62 (Bulling Investigation Documents) (noting that there is at least one instance where a student passed out chewing gum to determine who the student was that had the sensitivity to the chewing sounds)]. *See Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) ("[O]ne incident can satisfy" the

23

severity requirement.).  But, there is no genuine dispute regarding whether Defendant was deliberately indifferent to any alleged harassment.  *See E. Ky. Univ.*, 532 F.3d at 454.

At a minimum, to qualify as deliberate indifference in this context, the Defendant's action or inaction must "cause [students] to undergo" or "make them liable or vulnerable" to harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 630 (1999).  Schools need not purge "their [halls] of actionable peer harassment" to avoid liability.  *Id.* at 648.  And a victim is not entitled to "particular remedial demands." *Id.*  Rather, precedent directs that "courts should not second guess the disciplinary decisions that school administrators make." *Vance*, 231 F.3d at 260.  But "where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior."  *Id.* at 261. The ultimate question is whether a defendant's action "or lack thereof is clearly unreasonable in light of" the "circumstances" "known" by the defendant.  *Davis*, 526 U.S. at 648.

Here, the evidence shows that Defendant investigated each reported incident of student bullying, met with Doe weekly to discuss her concerns, and apprised Doe's parents of the actions that L&N took to protect Doe [*See, e.g.*, Doc. 94-2 at 57-62 (Bulling Investigation Documents)]. Defendant suspended at least one student because of, at least in part, his actions toward Doe[3] [*See* Doc. 94-1 at 46-48].  Plaintiff asserts that because Doe did not "see any effect from the investigations" of L&N's investigations the jury could infer deliberate indifference [*See* Doc. 95 at 45].  But even to the extent Doe found the investigations ineffective, she has not identified

---

[3] Doe's assertion that "KCBE acted like the discipline [of the student] was responsive to me, but that was not actually the case" is conclusory and unsupported and appears to be rooted in her own belief or speculation.  This is not sufficient to create a genuine dispute of material fact.  *See Bell*, 351 F.3d at 253 ("[C]onclusory and unsupported allegations, rooted in speculation, do not meet that burden.").

24

evidence that would permit a jury to infer that Defendant had "knowledge that its remedial action [wa]s inadequate and ineffective." *See Vance*, 231 F.3d at 260. It is Defendant's knowledge of the circumstances that is critical. *See Davis*, 526 U.S. at 648.

The evidence is that when Defendant had knowledge of alleged peer-on-peer harassment at L&N, it took reasonable action. As just one example, Doe's parents reported purported harassment of Doe when one student passed gummy worms to other students in a class on December 2, 2021 [*See* Doc. 94-2 at 69]. A little over three (3) hours later, Vice Principal Walsh responded to Doe's parents, indicating that she would investigate [*See id.*]. But even before Vice Principal Walsh responded to Doe's parents, she had begun an investigation, contacting the relevant teacher about the alleged incident [*See* Doc. 94-2 at 70]. This is hardly unreasonable. Another example: Doe's parents emailed a report of other students "mocking or mimicking" Doe in multiple classes on November 12, 2021 [*See* Doc. 94-2 at 67-68]. By 1:30 p.m. that day, Vice Principal Walsh responded informing Doe's parents that Walsh (1) "spoke to both [relevant] teachers," (2) addressed these concerns with other students, and (3) informed both teachers that "if these things are happening in class, . . . send me a discipline referral and I will start with school consequences to hopefully take care of these things" [*See id.* at 67]. Therefore, Plaintiff's peer-on-peer harassment theory fails.

As for board-on-student harassment, Plaintiff's theory is that "the Board *itself* was on notice of the cyberbullying spawned by Board members and took no action" [*See* Doc. 95 at 41]. Plaintiff disclaims a potential theory that "the Board is *vicariously* liable for the Board member's post themselves" [*Id.*]. So it appears that Plaintiff's theory is that the KCBOE is liable for the "cyberbullying" of Plaintiff by others because KCBOE did not punish the Board members who

posted about the law suit or "at the very least pass resolutions requiring the posts be taken down" [*See id.* at 42].  This theory stretches the law too far.

The social media posts that could be considered "cyberbullying" were made by unknown members of the public on the internet [Doc. 95-19 at 5 (Ethics Complaint at 5)].  Plaintiff has failed to identify evidence that these online posts "altered the condition of ***her education*** and created an abusive ***educational environment***."  *See E. Ky. Univ.*, 532 F.3d at 454 (emphasis added).  While hurtful comments may have impacted Doe's wellbeing, that is not enough to attribute liability for those posts to KCBOE.  Plaintiff has not identified any cyberbullying post that manifested in action taken against her at L&N.  Ultimately, it cannot be said that KCBOE was deliberately indifferent simply because it did not attempt to silence speech on the internet related a topic of political and societal concern [*See* Doc. 95-24 at 12-13 (Knox County Board of Education Regular Session Minutes) (noting the "strained political status of the community")].  *See Davis*, 526 U.S. at 648; *see also Connick v. Myers*, 461 U.S. 138, 145 (1983) ("speech on public issues occupies the 'highest run of the hierarchy of First Amendment values,' and is entitled to special protection" (citations omitted)); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) ("The government may not discriminate against speech based on the ideas or opinions it conveys.").  Therefore, Plaintiff's board-on-student harassment theory fails.

Last, Plaintiff's teacher-on-student harassment theory is based on the fact that L&N did not provide Doe's requested accommodation and some teachers or staff at the school declined to *sua sponte* implement her chosen accommodations [*See* Doc. 95 at 43].  But she offers no evidence that any L&N or KCBOE staff member harassed Doe because of her disability, let alone that KCBOE knew about the harassment and was deliberately indifferent to it [*See id.* at 43-44].

26

Accordingly, Defendant is entitled to summary judgment on Plaintiff's harassment claims under the ADA and Rehabilitation Act.

### B. Plaintiff's Section 1983 Claims (Counts One, Five, and Six).

Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### 1. Plaintiff Has Not Established That Defendant KCBOE Is Liable For Her Section 1983 Claims.

Under *Monell*, a plaintiff may sue a local government if "execution of [that] government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality" however, "may be held liable only for its *own* acts." *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (cleaned up). It is not liable under Section 1983 "simply because it employs a tortfeasor, nor can it be liable for an injury inflicted solely by its employees or agents." *See id.* (quotation omitted). To establish that Defendant KCBOE is liable for the acts of an employee, Plaintiff "must connect" a municipal employee's conduct "to a municipal policy or custom." *See id.* (quotation marks omitted).

There are generally four ways to establish an unlawful policy or custom: "'(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights

27

violations.'" *Id.* (*quoting Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Even then, the policy or custom must be "the moving force behind the injury alleged." *Id.* (quotations and citations omitted). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient." *Mann v. Helmig*, 289 Fed. App'x 845, 850 (6th Cir. 2008). There must be "an 'affirmative link' between policy or custom and violation" or "in tort principle terms" proximate, not but for causation. *Id.*

To establish proof of a policy, a plaintiff must "show that there were "formal rules or understandings—often but not always committed to writing—that [are] intended to, and [do], establish fixed plans of actions to be followed under similar circumstances consistently and over time." *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019). To establish a "custom" Plaintiff must show "proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). And a "custom" exists only if the pattern is "so permanent and well settled as to constitute a custom or usage with the force of law." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010); *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

In attempting to establish Section 1983 liability for Defendant KCBOE, Plaintiff initially identifies two allegedly relevant policies or customs: (1) "KCB[OE] defeating reasonable accommodation requests by invoking the 100%-guarantee requirement and the third party rights arguments," [*see* Doc. 95 at 47 (internal quotation omitted)], and (2) "defendant's policy of refusing her accommodation," [*see id.* at 53]. But Plaintiff proffered no evidence that would allow a reasonable jury to infer that KCBOE had (1) a policy or custom of denying requests for reasonable accommodations by invoking this "100%-guarantee requirement and the third party

28

rights arguments" or (2) "a policy of refusing" Doe's specific accommodation request [*See id.* at 47, 53].

Plaintiff specifically points to evidence of a settled lawsuit involving KCBOE and another child with misophonia and the Special Education Task Force Report to support her argument [*see* Doc. 95 at 47]. But ***neither*** one settled lawsuit ***nor*** this one Report shows either a fixed pattern of action that establishes a policy or a pattern that is "so permanent and well settled as to constitute a custom or usage with the force of law." *See Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019); *Vereecke*, 609 F.3d at 403. And because the record shows that Defendant engaged with Doe and her parents on Plaintiff's individual needs and requested accommodations, [*see* Doc. 94-3 (Odom Dep. 9:1-15:23)], this evidence does not permit a jury to infer (1) "[a] fixed plan[] of action[] to be followed under similar circumstances consistently and over time," *Jackson*, 925 F.3d at 829, or (2) a pattern "so permanent and well settled as to constitute a custom or usage with the force of law," *see Vereecke*, 609 F.3d at 403 (citation and quotations omitted).

Plaintiff also seeks to establish municipal liability under a failure to train theory or a failure to supervise theory [*See* Doc. 95 at 48]. A failure to train requires a plaintiff to show that (1) the "training program was inadequate for the tasks that officers must perform," (2) "the inadequacy was the result of the [municipality's] deliberate indifference," and (3) "the inadequacy was closely related to or actually caused the injury." *See Jackson*, 925 F.3d at 834. Under a failure to supervise theory, "a supervisory official's failure to supervise" is "not actionable [under Section 1983] ***unless*** the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it." *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citation omitted) (emphasis added). "[A]t a minimum,"

29

Plaintiff must show that a supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See id.* (citation omitted).

Plaintiff's failure to train theory is based on her assertion that "KCBE's 504 Coordinator" and "KCBE's staff as a whole" and perhaps the Board "require training" on disability law [*See* Doc. 95 at 49]. But, Plaintiff assesses that "[i]n all likelihood, Walsh, Odom, Allen and the teachers have received some sort of training on making accommodation[s]" [*Id.*]. So her theory must be that the likely training was inadequate. However, Plaintiff has not presented any evidence regarding the likely training Defendant provided such that the Court could assess whether the training was in fact inadequate. Without such evidence, a jury could not presume that (1) Defendant provided training, (2) the training was inadequate, and (3) the failure to train caused the Section 1983 injury of which Plaintiff complains. There are simply too many unsupported inferential leaps. The failure to supervise theory is deficient too—Plaintiff has not identified any supervisor who "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" any offending subordinate. *See Peatross*, 818 F.3d at 242 (citation omitted). "*Monell* claim[s] that survives summary judgment [are] exceedingly rare," and this case is no different. *See Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 541-42 (6th Cir. 2018). For the above reasons, Plaintiff's Section 1983 claims against Defendant KCBOE fail.

### 2. First Amendment Retaliation Claim (Count One).

Even if Defendant KCBOE could be liable to Plaintiff under Section 1983, her First Amendment claim fails as a matter of law. The First Amendment, applicable to the states through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech." *See Ward v. Polite*, 667 F.3d 727, 732 (6th Cir. 2012). To that end, "[t]he free-speech clause generally prohibits suppressing speech 'because of its message.'" *Id.* (quoting *Rosenberger v.*

30

*Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995)). And this prohibition applies in the public-school setting where those entities are arms of the government. *Id.* (citation omitted).

To prevail on a Section 1983 First Amendment retaliation claim, a plaintiff must show that (1) she engaged in constitutionally protected speech; (2) a defendant took adverse action against her that would cause her to suffer an injury that would likely chill a person of ordinary firmness from continuing in that speech; and (3) the adverse action was motivated at least in part by the plaintiff's constitutionally protected speech. *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023); *see also Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022); *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). But even if a plaintiff makes this showing, a defendant "can avoid liability by showing that [it] would have taken the same action even in the absence of the protected conduct." *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011). "Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Dye*, 702 F.3d at 294-95.

Plaintiff identified her "protect[ed] activity [as] the filing of the lawsuit" in this case [*See* Doc. 95 at 45]. Defendant admits that this was protected activity but challenges the second and third elements of Plaintiff's case [*see* Doc. 94-1 at 54]. Plaintiff identifies "the adverse action" for this claim was "ultimately forc[ing] [Doe] out of school" [*See* Doc. 95 at 49]. But even accepting the assertion that Defendant KCBOE forced Doe "out of school," Plaintiff has not offered evidence showing how Defendant was motivated to force Doe from L&N because she filed this lawsuit. This is "insufficient" to overcome a summary judgment motion. *See Bennett*, 86 F.4th

31

at 323. Because no "reasonable juror could fail to return a verdict for the defendant" on this claim, *see Dye*, 702 F.3d at 294-95, summary judgment is appropriate on this independent basis.

### 3. Fourteenth Amendment Equal Protection Claim (Count Five).

Similarly, even if Defendant KCBOE could be liable to Plaintiff under Section 1983, her Fourteenth Amendment Equal Protection Claim fails as a matter of law. The Fourteenth Amendment Equal Protection Clause requires "[s]tates (and their subdivisions) to treat people alike." *Gohl*, 836 F.3d at 684 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). But individuals with disabilities are not a suspect class. *See Tennessee v. Lane*, 541 U.S. 509, 522 (2004). Rather, classifications based upon a disability only violate the Equal Protection Clause "if they lack a rational relationship to a legitimate governmental purpose." *Id.* Under such review, the plaintiff bears the burden of demonstrating that there is no rational basis for the government's classification and that a defendant "treated similarly situated individuals in a disparate manner." *Id.* To show that disparate treatment, Plaintiff must show that Defendant acted with animus—that "invidious discriminatory purpose was a motivating factor" in the decision. *See Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 266 (1977)

Plaintiff states her theory for this claim as "Jane Doe asserts that defendant's policy of refusing her accommodation caused her to be treated differently from her non-disabled peers" [*See* Doc. 95 at 53]. Plaintiff has "the burden of showing that [Defendant] intentionally treated [Doe] differently—because [s]he is disabled—than similarly situated students who were like [her] in all relevant respects." *E. Ky. Univ.*, 532 F.3d at 458 (6th Cir. 2008). She has not met

32

this burden [*See* Doc. 95 at 52-57]. *See Marie v. Am. Red. Cross*, 771 F.3d 344, 361 (6th Cir. 2014). Nor has Plaintiff identified evidence showing that Defendant lacks a rational basis for the classification [*See* Doc. 95 at 52-57]. *See Lane*, 541 U.S. at 522. Rather, Plaintiff merely asserts without factual support that Defendant acted with animus in denying Doe's preferred accommodation [*See, e.g.*, Doc. 95 at 54]. Conclusory assertions of Plaintiff's beliefs regarding Defendant's animus are not sufficient. *See Arlington Heights*, 429 U.S. at 266 (requiring a "sensitive inquiry" requiring proof that "invidious discriminatory purpose was a motivating factor" in Defendant's action). Therefore, summary judgment is appropriate on this independent basis.

III.     **Conclusion**

For the reasons above, the Court **GRANTS Defendant's "Motion for Summary Judgment" [Doc. 94-1] IN PART and DENIES the Motion IN PART.** The only claims that remain are Plaintiff's ADA Discrimination Reasonable Accommodation claim and Rehabilitation Act Discrimination Reasonable Accommodation claim. The Court **DISMISSES** the remainder of Plaintiff's claims.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge

33